O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, ET AL., <br><br> Plaintiff, <br><br> v. <br><br> JAMES A. KLEIN, ET AL., <br><br> Defendants. | Case No. CV 16-05968 DDP (MRWx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE AFFIRMATIVE DEFENSES** <br><br> [Dkt. 46] |

Presently before the court is Plaintiffs' Motion to Strike Defendants' Affirmative Defenses. Having considered the submissions of the parties, the court grants the motion and adopts the following Order.

**I.  Background**

Defendant James Klein ("Klein") is the named inventor on several patents for building materials. (Complaint ¶ 9.)  Klein assigned some of those patents to a company he helped form, Defendant Blazeframe Industries, Ltd. ("Blazeframe"). (Id. ¶ 10.) Klein, Blazeframe, and Plaintiffs California Expanded Metal Products Company ("CEMCO") and ClarkWestern Dietrich Building

Systems LLC ("Clark") litigated several questions regarding the ownership, licensing, and alleged infringement of the patents in a prior case before this court. (Compl. ¶ 11.) See No. CV 12-10791-DDP(MRWx) ("the prior case").

The parties settled all claims in the prior case. (Compl. ¶ 12.) Plaintiffs allege that the settlement agreement requires Blazeframe to assign the patents to CEMCO in consideration for an up-front payment. (Id. ¶ 16.) Blazeframe retained a royalty-free license to "commercialize the Patents in a restricted territory" spanning six states. (Id. ¶¶ 16-17.) CEMCO also agreed to grant a license to Clark in exchange for royalty payments, a portion of which would be paid to Blazeframe. (Id.)

Plaintiffs allege that CEMCO made an $800,000 payment to Blazeframe, as required by the settlement agreement, and that Plaintiffs have otherwise complied with the agreement. (Compl. ¶¶ 22-23, 35.) Plaintiffs allege that Blazeframe is breaching the settlement agreement by, among other things, selling licensed products outside the agreed-upon six state area. (Compl. ¶ 28.) Plaintiffs further allege that these sales have been "orchestrated by Klein." (Id. ¶ 37.) Plaintiffs also allege that by selling licensed products outside of the agreed-upon geographical area, Blazeframe is infringing upon the patents owned by CEMCO, to which Clark has an exclusive license outside of Blazeframe's territory. (Id. ¶¶ 44-45.)

Defendants' First Amended Answer alleges several affirmative defenses, including patent invalidity, patent unenforceability, and patent misuse. Plaintiffs now move to dismiss those affirmative defenses.

## II. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To show that a defense is 'insufficient,' the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp.2d 1028, 1032 (C.D. Cal. 2002).

In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party. See In re 2TheMart.com Secs. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517 (1994). While motions to strike are generally disfavored, "where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." California v. United States, 512 F. Supp. 36, 38 (N.D. Cal. 1981). This is because the purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by disposing of those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)).

**III. Discussion**

    A.   Patent Invalidity and Patent Unenforceability

    Defendants allege that one or more of the patents at issue here "may be invalid," citing "all prior art that CEMCO cited in the prior litigation." (First Amended Answer ("FAA") at 17.) Similarly, Defendants allege that the patents are unenforceable "for all the reasons cited by CEMCO in the prior case . . . ." (FAA at 18.) Plaintiffs argue that the doctrine of assignor estoppel bars Defendants from asserting patent invalidity and patent unenforceability defenses. (Motion at 7, 10.)

    "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent . . . from later contending that what was assigned is a nullity." Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988). Considerations of justice and fairness dictate that "an assignor should not be permitted to sell something and later to assert that what was sold is worthless, all to the detriment of the assignee." Id.; see also Brilliant Instruments, Inc. v. GuideTech, Inc., No. C 09-5517 CW, 2014 WL 576244, at *2 (N.D. Cal. Feb. 12, 2014). Application of the assignor estoppel doctrine is not automatic, and should consider the balance of the equities between the parties. Diamond Scientific, 848 F.2d at 1225. "[T]he primary consideration . . . is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity." Id.

    Here, CEMCO paid Blazeframe $800,000 to transfer ownership of the patents. To allow Blazeframe to now argue, despite its having

4

received payment from CEMCO, that "what was sold is worthless" would be grossly unfair. Diamond Scientific, 848 F.2d at 1224. Defendants appear to suggest that the balance of equities nevertheless tips in their favor because in the prior litigation, CEMCO made the same invalidity and unenforceability arguments that Defendants seek to assert here. (Opposition at 8-9; FAA at 17-18.) In other words, Defendants argue, CEMCO had adequate notice of possible weaknesses in the patents before it agreed to buy them, and CEMCO's $800,000 payment placed it "in the position of a buyer who purchased a used car 'as is.'" (Opposition at 9:3.)

This argument has no merit. There is no dispute that CEMCO raised invalidity and unenforceability defenses in response to allegations of infringement. The prior litigation settled, however, and those defenses were never fully adjudicated. Had the defenses proved successful, CEMCO clearly would not have agreed to pay Blazeframe anything for worthless patents. The fact that CEMCO had notice of those possible challenges to the patents, however, makes it no more equitable for the named inventor or seller of those patents to exploit those weaknesses after pocketing the buyer's money. As Plaintiffs aptly state, "Even if Defendants' analogy to the purchase of a used car applies at all, the buyer of a used car would not expect that car's previous owner to be permitted . . . to blow up the car after selling it." (Reply at 6:21-22.) The court declines Defendants' invitation to create a "notice exception" to the assignor estoppel doctrine where none exists. Given the fairly ordinary circumstances here, the court

concludes that the balance of equities weighs entirely in Plaintiffs' favor.[1]

Defendants also argue that even if Blazeframe is not permitted to raise invalidity or unenforceability defenses, Klein should not be estopped from raising those defenses. (Opp. at 9.)

Assignor estoppel bars both the assignor and other parties in privity with the assignor, such as a corporation founded by the assignor. Synopsys, Inc. v. Magma Design Automation, Inc., No. C-04-3923 MMC, 2005 WL 1562779, at *2 (N.D. Cal. July 1, 2005) (citing Diamond Scientific, 848 F.2d at 1224 and Shamrock Technologies, Inc. v. Medical Sterilization, Inc., 903 F.2d 789, 793 (Fed.Cir.1990)). Defendants contend that Klein "arguably received no money (qua individual) as part of the . . . settlement" and that "[t]o say that Klein and BlazeFrame were 'in privity' . . . is arguable." (Opp. at 9:22, 10:1-2 (emphases omitted, parenthetical in original).) These arguments are baseless. There is no dispute that Klein was the named inventor of the patents, co-founded Blazeframe, assigned the patents to Blazeframe, and was a 50% shareholder at the time of the settlement.[2] Nor is there any merit to Defendants' suggestion that Klein did not consent to the settlement agreement, either on Blazeframe's behalf or individually. At the settlement conference, the transcript of which constitutes the settlement agreement, Blazeframe's counsel

---

[1] Extraordinary circumstances, such as fraud or duress in the assignment of a patent or express contractual reservations of rights to challenge a patent, might warrant an exception from assignor estoppel. See Brilliant Instruments, 2014 WL 576244 at *3. No such circumstances are present here.

[2] Plaintiffs' counsel has further represented that Klein is currently the sole owner of Blazeframe. (Reply at 9:13-14.)

6

appeared "for limited purposes today, for Jim Klein, as well" and stated an understanding "that he agrees to the settlement." (Compl., Ex. 1 at 4:16-17, 5:20-21.) Counsel also spoke "on the phone with Mr. Klein and with his personal attorney, and he consented to the settlement." (Id. at 6:24-25.) Klein was undoubtedly in privity with Blazeframe at the time of the settlement, and remains so at the present time. Accordingly, the court declines to apply a "relaxation of the doctrine of assignor estoppel with respect to Klein." (Opp. at 10:12.)

    B.   Patent Misuse

Plaintiffs also ask that the court strike Defendants' affirmative defense of patent misuse.[3] Although Defendants state that they "believe that all of [their] affirmative defenses are properly pled[,]" Defendants do not substantively oppose Plaintiffs' patent misuse argument. (Opp. at 10:23-24.) Instead, Defendants contend that counsel "scrambled to file a hasty answer" because he was retained relatively late. (Opp. at 11:1.) Defendants therefore seek leave to amend. (Opp. at 10.) Although the court notes that the answer at issue here is in fact Defendants' First Amended Answer, the court grants Plaintiffs' motion to strike the patent misuse affirmative defense with leave to amend.

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Motion to Strike is GRANTED. Defendants' affirmative defenses of patent invalidity and patent unenforceability are STRICKEN, with prejudice. Defendants'

---

[3] Plaintiffs move to strike the patent misuse defense under Rule 12(b)(6) rather than Rule 12(f).

affirmative defense of patent misuse is STRICKEN, with leave to amend. Any amended Answer shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: March 3, 2017

DEAN D. PREGERSON
United States District Judge