R. Joseph Trojan CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: 310-777-8399
Facsimile: 310-691-1086
Attorneys for Plaintiff,
California Expanded Metal Products Co.

FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: 513.651.6800
Facsimile: 513.651.6981
Ann G. Schoen (*pro hac vice*)
aschoen@fbtlaw.com
Jeffrey F. Kersting (*pro hac vice*)
jkersting@fbtlaw.com
Attorneys for Plaintiff Clarkwestern Dietrich
Building Systems LLC d.b.a. ClarkDietrich
Building Systems

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, a California corporation; and CLARKWESTERN DIETRICH BUILDING SYSTEMS LLC, dba CLARKDIETRICH BUILDING SYSTEMS, an Ohio limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>JAMES A. KLEIN, an individual; and BLAZEFRAME INDUSTRIES, LTD., a Washington company,<br><br>Defendants. | CASE NO. 16-cv-5968 DDP (MRWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS CEMCO AND CLARKDIETRICH'S MOTION TO STRIKE DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE**<br><br>The Honorable Dean D. Pregerson<br><br>Date: May 1, 2017<br>Time: 10:00 a.m.<br>Courtroom 9C (1st Street) |

TROJAN LAW OFFICES
BEVERLY HILLS

# Table of Contents

PAGE

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ...................................................... 3

      A.    Procedural Facts .................................................... 3

      B.    Overview of Defendant's Patent Misuse Defense ................ 3

III.  ARGUMENTS ................................................................... 4

      A.    Discussion of Law .................................................. 4

            1.    Fed. R. Civ. P. 12(f) ..................................... 4

            2.    Fed. R. Civ. P. 12(b)(6) ................................. 5

            3.    Law on Patent Misuse ................................... 6

      B.    Defendants Fail to State a Defense of Patent Misuse ......... 7

            1.    Enforcing the Territorial Restriction Is Not Misuse
                  of the Assigned Patents ................................. 8

                  a)    No Price Fixing ................................. 9

                  b)    The Supplemental Agreement Is Not Secret
                        But Is Irrelevant .............................. 9

                  c)    Defendants' Laundry List of Allegations ...... 10

                        (i)    Dispute Over Royalties................. 10

                        (ii)   CEMCO's Prerogative Not to Practice
                               Patents................................ 11

                        (iii)  Defendants' Sham "Authorized
                               Dealers" .............................. 11

(iv) UL Listings ........................................................... 12

(v) The Noerr-Pennington Doctrine .......................... 12

2. CEMCO's Claim on Other Patents Is Not Misuse
of the Assigned Patents ............................................. 13

3. Repairs and Defendants' Sales of Intumescent
Tape ............................................................................. 14

4. Sales in Canada Are Not an Issue ............................. 15

5. Trademark Rights, UL Listings, Etc. ........................ 16

6. Invalidity ................................................................... 17

C. The Court Should Not Grant Leave to Amend ................... 18

IV. CONCLUSION ............................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF AUTHORITIES

*Cases*                                                                          PAGE

*Advanced Cardiovascular Sys., Inc. v. Scimed Sys., Inc.*,
    No. C-96-0950 DLJ, 1996 WL 467277, at *3–4 (N.D. Cal. July
    24, 1996) ................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................. 5, 8

*BE & K Const. Co. v. N.L.R.B.*,
    536 U.S. 516, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002) ........................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................. 5

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ................................................. 9

*Blakeney v. Karr*,
    No. C13-5076 BHS/KLS, 2013 WL 2446279 (W.D. Wash.
    June 5, 2013) ................................................. 5

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998) ................................................. 17

*Dunlop Company Ltd. v. Kelsey-Hayes Co.*,
    484 F.2d 407 (6th Cir.1973) ................................................. 6

*Ethyl Gasoline Corp. v. United States*,
    309 U.S. 436, 60 S. Ct. 618, 84 L. Ed. 852 (1940) ................................ 6, 7

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ................................................. 4, 18

*Miller Insituform, Inc. v. Insituform of N. Am., Inc.*,
    605 F. Supp. 1125, (M.D. Tenn. 1985) ................................................. 6

*Sosa v. DIRECTV, Inc.*,

437 F.3d 923 (9th Cir. 2006) ........................................................ 13

*U.S. Philips Corp. v. KXD Tech., Inc.,*

    No. CV 05-8953 ER (PLAX), 2006 WL 8421895, (C.D. Cal.

    Sept. 14, 2006) ........................................................... 7, 8, 9

*United States v. Parker-Rust-Proof Co.,*

    61 F.Supp. 805, (E.D.Mich.1945) ............................................ 6

*Van Winkle v. Allstate Ins. Co.,*

    290 F.Supp.2d 1158 (C.D. Cal. 2003) ....................................... 5

*Windsurfing Int'l, Inc. v. AMF, Inc.,*

    782 F.2d 995, 228 USPQ 562 (Fed. Cir. 1986) ........................... 7

*Whittlestone, Inc. v. Handi-Craft Co.,*

    618 F.3d 970 (9th Cir. 2010) ................................................. 4


**Codes, Rules, & Statutes**                            **PAGE**

35 U.S.C. § 261     ......................................................... 1, 6, 7, 8, 11

35 U.S.C. § 271     ............................................................... 11, 15

Fed. R. Civ. P. 12(b)(6).......................................................... 1, 5

Fed. R. Civ. P. 12(f) ......................................................... 1, 3, 4, 18

U.S. CONST. amend. I.............................................................. 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs California Expanded Metal Products Company ("CEMCO") and Clarkwestern Dietrich Building Systems LLC's, d.b.a. ClarkDietrich Building Systems ("ClarkDietrich"), respectfully submit this motion to strike Defendants James A. Klein ("Klein") and BlazeFrame Industries, Ltd.'s ("BlazeFrame") Fifth Affirmative Defense of Patent Misuse in Defendants' Second Amended Answer (Dkt. #75) pursuant to Fed. R. Civ. P. 12(f) or dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**I.    INTRODUCTION**

In the Second Amended Answer, Defendants allege as their Fifth Affirmative Defense that Plaintiffs have misused the patents that BlazeFrame sold to CEMCO as part of the October 2, 2015 Settlement Agreement in the prior case, *CEMCO v. ClarkDietrich, Klein, and BlazeFrame*, Case No. CV12-10791 ("the '10791 case"). (Dkt. #75 at 16.)  The crux of Defendants' patent misuse defense is that CEMCO and ClarkDietrich colluded to "violat[e] U.S. antitrust law and to impermissibly extend its 'patent monopoly' by expanding the temporal and geographic scope of the BlazeFrame assigned patents, all with anticompetitive effect…" (Dkt. #75 at p. 17:11-13.)  Defendants' patent misuse defense is without merit.

CEMCO's exercise of its rights to the assigned patents, for which CEMCO paid a handsome sum of $800,000, is not a violation of antitrust laws.  In particular, CEMCO's grant of territorial licenses to ClarkDietrich and BlazeFrame, which Defendants themselves agreed to as part of the Settlement Agreement, is not anticompetitive.  Under Section 261 of the Patent Act, "The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole *or any specified part of the United States*."  35 U.S.C. § 261 (emphasis added).  Hence, as the Ninth Circuit taught long ago, "[e]xclusive territorial licenses granted under patents are old in the law…they are legal."  *Brownell v. Ketcham Wire & Mfg. Co.*,

211 F.2d 121, 129 (9th Cir. 1954). In fact, under the old ClarkDietrich-BlazeFrame agreement, BlazeFrame granted ClarkDietrich a similar territorial license that Defendants are complaining of now. (Dkt. #385-7.)

Defendants falsely accuse CEMCO and ClarkDietrich of forming "secret" agreements "to divide up the United States into monopolistic and anticompetitive sales regions or zones." (Dkt. #75 at p. 17:16 - 18:2.) CEMCO and ClarkDietrich are only enforcing the territorial provision in the Settlement Agreement, which Defendants have admitted to breaching by selling outside the restricted territory. Therefore, the Court must dismiss Defendants' patent misuse defense because Defendants have failed to allege any facts to support their allegation that CEMCO has "impermissibly extend[ed] its 'patent monopoly' by expanding the temporal and geographic scope of the BlazeFrame assigned patents." (Dkt. #75 at p. 17:12.)

Further, Defendants' rehashing of allegations regarding trademarks, UL listings, and the like[1] do not point to misuse of the assigned patents. To the extent there are any disputes concerning trademarks, UL listings and the like, those are contract disputes based entirely on the Settlement Agreement, not the patents-at-issue. In addition, in contravention of the Court's recent order (Dkt. #72), Defendants attempt to disguise impermissible patent validity and unenforceability allegations under the guise of patent misuse.

Defendants' patent misuse defense should be stricken with prejudice because Defendants have already had two opportunities to amend their Answer, yet they are still unable muster any facts to support this defense.

////

---

[1] All of which have been discussed at length in ClarkDietrich's Application for Temporary Restraining Order (Dkt. #53) and Plaintiffs' Motion for Preliminary Injunction (Dkt. #61)

TROJAN LAW OFFICES
BEVERLY HILLS

## II.    STATEMENT OF FACTS

### A.    Procedural Facts

Plaintiffs filed their Complaint on August 10, 2016.  (Dkt. #1.)  After a delay of nearly three months, Defendants filed an Answer on November 2, 2016.  (Dkt. #40.)

Defendants then filed a First Amended Answer (FAA) on November 23, 2016.  (Dkt. #44.)

On December 7, 2016, Plaintiffs moved to strike Defendants' affirmative defenses of patent invalidity, unenforceability, and misuse in the FAA under FRCP 12(f).  (Dkt. #46.)  The Court granted Plaintiffs' motion on March 3, 2017, striking Defendants' invalidity and unenforceability defenses with prejudice.  (Dkt. #72.)  Noting that "Defendants do not substantively oppose Plaintiffs' patent misuse argument," and "[i]nstead, Defendants contend that counsel 'scrambled to file a hasty answer' because he was retained relatively late," the Court granted Defendants leave to amend their patent misuse defense. (*Id*. at 7.)

Accordingly, Defendants filed their Second Amended Answer (SAA) on March 17, 2017.  (Dkt. #75.)

### B.    Overview of Defendants' Patent Misuse Defense

Defendants' Fifth Affirmative Defense in the SAA alleges that Plaintiffs have misused the assigned patents on seven grounds:

(1) "First, … CEMCO and Clark have formed an explicit agreement to divide up the United States into monopolistic and anticompetitive sales regions or zones in which only certain brands and versions of the Firestopping Products can be sold…" (Dkt. #75 at 17:16 – 19:27);

(2) "Second, …CEMCO and Clark have been attempting to control…all patents relating in any way to the Firestopping Products…" (Dkt. #75 at 19:28 – 20:11);

(3) "Third, …CEMCO and Clark are attacking and bullying BlazeFrame and Klein with threats of patent infringement claims for making lawful and permissible repairs to already existing Firestopping Products…" (Dkt. #75 at 20:12-19);

(4) "Fourth, CEMCO and Clark complain of BlazeFrame and Klein's selling of intumescent tape outside the six-state area…" (Dkt. #75 at 20:20-27);

(5) "Fifth, CEMCO and Clark have attempted to limit BlazeFrame's sales in Canada…" (Dkt. #75 at 20:28 – 21:8);

(6) "Sixth, CEMCO and Clark are trying to limit and tie BlazeFrame and Klein's conduct more generally to Clark's efforts by bullying and threatening (and suing) a patent infringement suit if BlazeFrame and Klein do not give Clark trademark rights" and "trying to force Jim Klein to offer engineering judgments…" (Dkt. #75 at 21:9-25); and,

(7) "Seventh, CEMCO and Clark are asserting patents that they know or believe to be invalid and unenforceable…" (Dkt. #75 at 21:26 – 22:8).

The allegations are without merit for the following reasons.

## III. ARGUMENTS

### A. Discussion of Law

#### 1. Fed. R. Civ. P. 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As the Ninth Circuit has noted, "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *see also, Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Plaintiffs move to strike Defendants' patent misuse defense pursuant to Rule 12(f).

## 2.    Fed. R. Civ. P. 12(b)(6)

Plaintiffs also move to dismiss Defendants' patent misuse defense for failure to meet the standards of Rule 12(b)(6).    *Blakeney v. Karr*, No. C13-5076 BHS/KLS, 2013 WL 2446279, at *1 (W.D. Wash. June 5, 2013) ("affirmative defenses must meet the standards of Fed.R.Civ.P. 12(b)(6). Thus, when viewed in the light most favorable to the pleader, if the affirmative defense fails to state a claim upon which relief can be granted, it shall be dismissed.").

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the pleading fails to state a plausible claim for relief on its face. Fed.R.Civ.P. 12(b)(6); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1161 (C.D. Cal. 2003) ("Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint.").   While the Court should construe the factual allegations in the light most favorable to the non-moving party, the Supreme Court teaches that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a patent misuse defense, the pleading must be more than conclusory.  As the Northern District of California has noted:

> Given the specific exceptions to patent misuse provided by Congress, defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense. Defendant must state how plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action.

*Advanced Cardiovascular Sys., Inc. v. Scimed Sys., Inc.*, No. C-96-0950 DLJ, 1996 WL 467277, at *3–4 (N.D. Cal. July 24, 1996).

### 3.  Law on Patent Misuse

In *Ethyl Gasoline Corp. v. United States*, the Supreme Court taught:

> The patent law confers on the patentee a limited monopoly, the right or power to exclude all others from manufacturing, using or selling his invention….**He may grant licenses to make, use or vend, restricted in point of space or time, or with any other restriction upon the exercise of the granted privilege, save only that by attaching a condition to his license he may not enlarge his monopoly and thus acquire some other which the statute and the patent together did not give.**

309 U.S. 436, 456, 60 S. Ct. 618, 625, 84 L. Ed. 852 (1940) (emphasis added).

Under Section 261 of the Patent Act, (1976), a patentee may grant exclusive territorial rights over any specified part of the United States.  35 U.S.C. § 261 ("The applicant patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.").    Thus, as the Sixth Circuit stated in *Miller Insituform, Inc. v. Insituform of N. Am., Inc.*, "Section 261 immunizes from antitrust analysis an allocation of territories created by a patentee's use of exclusive licenses." 605 F. Supp. 1125, 1130–31 (M.D. Tenn. 1985), *aff'd*, 830 F.2d 606 (6th Cir. 1987).[2]   The Sixth Circuit went on to explain, "The immunity also extends to a patent licensee's division of its territory among its various sublicensees." *Id.* (citing *Ethyl Gasoline Corp. v. United States*, *supra*, 309 U.S. 436, 456 (1940)).  Accordingly, "the patentee can convey exclusive rights to

---

[2] Citing *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128–29 (9th Cir.1954); *United States v. Parker-Rust-Proof Co.*, 61 F.Supp. 805, 812–13 (E.D.Mich.1945); *see also Dunlop Company Ltd. v. Kelsey-Hayes Co.*, 484 F.2d 407, 417 (6th Cir.1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974).

TROJAN LAW OFFICES
BEVERLY HILLS

another, in whole or in part, and may give a licensee an exclusive right to manufacture, use or sell a patented product, or practice a patent process, in a particular zone or territory." *Id.; see also, Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1001–02, 228 USPQ 562, 566 (Fed. Cir. 1986) (The key inquiry under the patent misuse doctrine is whether the patentee or patent owner has "impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect.").

Applying the law of 35 U.S.C. § 261 and *Ethyl Gasoline* and its line of cases, Defendants have failed to state a defense of patent misuse.

### B.    Defendants Fail to State a Defense of Patent Misuse

As a preliminary note, Defendants begin by making the confusing assertion that their patent misuse defense "incorporates by reference … any defense and counterclaim concerning antitrust violations, all allegations in support of those counterclaims and defenses…" (Dkt. #75 at 17:1-3.)  Defendants' SAA does not contain any "counterclaim concerning antitrust violations."  Therefore, to the extent Defendants are alleging antitrust violations, such allegations are confined to the Fifth Affirmative Defense.

Further, Defendants' antitrust allegations are insufficient to support their patent misuse defense.  In *U.S. Philips Corp. v. KXD Tech., Inc.*, the Central District of California, Hon. Edward Rafeedie presiding, struck the defendant's patent misuse defense, which was based on the same sort of antitrust claims that are asserted here:

> In oral argument, Defendants argued that the anticompetitive conduct alleged in their counterclaim also supported their patent misuse affirmative defense; however, as discussed above, the alleged anticompetitive conduct is insufficient to support an antitrust claim. *It is also insufficient to support a patent misuse affirmative defense, since the alleged conduct appears to fall within the scope of Philips's patents.* Accordingly, Philips's Motion to strike Defendants' affirmative defense is GRANTED.

*U.S. Philips Corp. v. KXD Tech., Inc.*, No. CV 05-8953 ER (PLAX), 2006 WL 8421895, at *4 (C.D. Cal. Sept. 14, 2006) (emphasis added). Here, Defendants' Fifth Affirmative Defense sets forth seven main grounds of alleged patent misuse among a scattershot of other allegations. However, the essence of the defense is that Plaintiffs have somehow 'bullied' Defendants based on accused conduct that falls within the scope of the Settlement Agreement and the patents that were assigned under it.

## 1. Enforcing the Territorial Restriction Is Not Misuse of the Assigned Patents

First, Defendants allege, "CEMCO and Clark have formed an explicit agreement to divide up the United States into monopolistic and anticompetitive sales regions or zones in which only certain brands and versions of the Firestopping Products can be sold." (Dkt. #75 at 17:16-19.) The unsupported assertion that Plaintiffs have divvied up territories "into monopolistic and anticompetitive sales regions" is precisely the kind of "legal conclusion couched as a factual allegation" that the Court cannot accept as true. *Ashcroft*, 556 U.S. at 678. In point of fact, it is not true.

The "explicit agreement" is just the Settlement Agreement. Defendants negotiated that agreement, under which Defendants agreed to take a license for six states: Oregon, Washington, Alaska, Idaho, Montana and Wyoming. (Dkt. #1-1: Hearing Tr. 9:24 – 10:3.) Defendants cannot be heard to argue that CEMCO and ClarkDietrich colluded "to divide up the United States into monopolistic and anticompetitive sales regions" when Defendants themselves negotiated the territorial division and agreed to it as CEMCO's patent licensee.

Regardless, in accordance with 35 U.S.C. § 261, CEMCO, as owner of the assigned patents, can grant exclusive territorial rights "to the whole or any specified part of the United States" to whomever it sees fit. 35 U.S.C. § 261. There is nothing anticompetitive in CEMCO exercising its right under § 261 to grant

TROJAN LAW OFFICES
BEVERLY HILLS

ClarkDietrich exclusive territorial rights. *Brownell v. Ketcham Wire & Mfg. Co.,* 211 F.2d 121, 129 (9th Cir. 1954) ("Exclusive territorial licenses granted under patents are old in the law."). Thus, the license to ClarkDietrich has not "impermissibly broadened the physical or temporal scope" of the patents at issue or otherwise had any anticompetitive effects.

### a) No Price Fixing

Further, to plead antitrust violations under § 1 of the Sherman Act, as Defendants attempt to do here, Defendants must allege (1) there was an agreement to fix prices, (2) the agreement harmed competition, and (3) the agreement affected interstate commerce. *U.S. Philips Corp. v. KXD Tech., Inc.*, No. CV 05-8953 ER (PLAX), 2006 WL 8421895, at *1 (C.D. Cal. Sept. 14, 2006) (*citing Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1410 (9th Cir. 1991)).

Here, Defendants allege, "[o]n information and belief, they [*i.e.,* CEMCO and ClarkDietrich] have also agreed on the price structure and ranges for such products." (Dkt. #75 at 17:19-20.) This is false. Though Defendants have had months of discovery, Defendants are unable to allege any fact to support this wildly conclusory claim that Plaintiffs fixed prices for the BlazeFrame Products.

### b) The Supplemental Agreement Is Not Secret But Is Irrelevant

Defendants further allege that CEMCO and ClarkDietrich "reached a secret supplemental agreement...CEMCO in that first secret agreement agreed to stand in the shoes of BlazeFrame and promised Clark all of things (*e.g.,* TMs and engineering judgements) that are now hotly contested." (Dkt. #75 at 18:2-7.) Plaintiffs will address the trademarks and engineering judgements below. The "secret" agreement to which Defendants refer is an agreement reached in another litigation in Ohio. The Ohio case involved a disparagement action against the Certified Steel Stud Association, Inc ("CSSA"). Defendants have failed to allege

facts to show how a settlement in a different case against the CSSA has any bearing on their allegation that Plaintiffs have misused the patents at issue in this case.

### c) Defendants' Laundry List of Allegations

Defendants go on to make a laundry list of other allegations:

> …Plaintiffs unlawfully conspired and further agreed as follows: (1) that BlazeFrame would not be paid any royalties for the period of October 2, 2015 through April 4, 2016, even though BlazeFrame is owed royalties for that period of time; (2) that CEMCO would not practice any of the BlazeFrame patents, even though CEMCO is the patent holder; (3) that CEMCO would prevent all authorized dealers located within BlazeFrame's six-state territory from reselling BlazeFrame® outside of the six-state territory, even though the parties never agreed to limit the downstream use or sale of BlazeFrame® products; (4) that CEMCO would secure for the benefit of Clark all necessary UL [Underwriters Laboratory] and Western Fire Center, Inc. certifications, even the though the parties never agreed to these things; and (5) that CEMCO would sue BlazeFrame if BlazeFrame refused to capitulate to these new and additional demands…

(Dkt. #75 at 18:12-28.)   None of these allegations touch on "the physical or temporal scope" of the assigned patents (and several are wholly unrelated to the patents at all), and therefore, do not support Defendants' patent misuse defense.

### (i) Dispute Over Royalties

Defendants' allegation that Plaintiffs conspired to withhold royalties to BlazeFrame for the period of October 2, 2015 through April 4, 2016 is utterly without merit.  This issue has been addressed in Plaintiffs' briefings on the motion for preliminary injunction (Dkt. #61).   But to reiterate, under the Settlement Agreement, ClarkDietrich does not owe royalties to BlazeFrame; it owes royalties to CEMCO.  Under Defendants' theory that the prior BlazeFrame/ClarkDietrtich license agreement terminated in October 2015, ClarkDietrich could not owe royalties to BlazeFrame because the prior agreement was terminated.  Further, it could not owe royalties under the Settlement Agreement for the period from

-10-

TROJAN LAW OFFICES
BEVERLY HILLS

October 2015 to April 2016 because BlazeFrame did not assign the patents until April 1, 2016 and so CEMCO was not yet the owner of record. (Dkt. #64-5.)

More germane to this motion, whether Defendants are owed royalties is a contractual issue, not based on an attempt to expand the temporal or geographic scope of the patents. The party accused of a supposed bad act is ClarkDietrich, the one party is this long-running dispute which has never owned the patents. Thus, it is the one party which cannot have "misused" them. Therefore, the dispute over royalties for that limited period of time is irrelevant to Defendants' patent misuse defense.

### (ii) CEMCO's Prerogative Not to Practice Patents

Defendants' allegation "that CEMCO would not practice any of the BlazeFrame patents" is also neither here nor there, since it is CEMCO's prerogative as the patent owner to license the patents under 35 U.S.C. § 261 however it wants. Further, CEMCO's decision not to practice the patents is not misuse of the patents. (*See* 35 U.S.C. § 271 ("No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following … refused to license or *use* any rights to the patent") (emphasis added).)

### (iii) Defendants' Sham "Authorized Dealers"

Defendants' allegation "that CEMCO would prevent all authorized dealers located within BlazeFrame's six-state territory from reselling BlazeFrame® outside of the six-state territory" is another issue of contract interpretation, not a question of patent misuse. As recently discussed in Plaintiffs' respective supplemental briefs (Dkt. #76 and #79) in support of Plaintiffs' motion for preliminary injunction (Dkt. #61), there is abundant evidence that Defendants have used phony "authorized resellers" and "local brokers" (Dkt. #76)—*e.g.,* Big Mountain—to sell BF Products

outside the restricted territory. Defendants cannot skirt the Agreement by using so-called "authorized resellers" and "local brokers" to sell BF Products outside the restricted territory, which renders the territorial restriction in the Settlement Agreement completely meaningless. This dispute is fundamentally about the scope of the Settlement Agreement. Plaintiffs' effort to enforce the territorial restriction does not constitute patent misuse because it does not "impermissibly broaden the physical or temporal scope" of the assigned patents. Thus, Plaintiffs' claims regarding these sham "dealers" are not patent misuse.

### (iv) UL Listings

Defendants' allegation "that CEMCO would secure for the benefit of Clark all necessary UL and Western Fire Center, Inc. certifications" is also another key issue of contract interpretation, one which was addressed in ClarkDietrich's Application for a Temporary Restraining Order to prevent Defendants from removing ClarkDietrich from the (UL) listings and other third-party certifications for the BF Products. (Dkt. #53.) Regardless of the merits of the dispute over the UL and other certifications, that dispute with ClarkDietrich has no bearing on CEMCO's enforcement of the patents, and thus the allegation does not support Defendants' patent misuse defense.

### (v) The Noerr-Pennington Doctrine

As to Defendants' allegation "that CEMCO would sue BlazeFrame if BlazeFrame refused to capitulate to these new and additional demands" (Dkt. #75 at 18:25-26), the allegation is baseless. Plaintiffs sued BlazeFrame because BlazeFrame violated the Settlement Agreement by selling outside the restricted territory. Moreover, such sales outside the restricted territory infringe CEMCO's assigned patents. Hence, CEMCO and its exclusive licensee, ClarkDietrich, not only have every right to sue to enforce the contract and the patents, but were left with no other choice.

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

The filing of the present suit is protected under the First Amendment's Petition Clause. The Petition Clause states that "Congress shall make no law… abridging … the right of the people… to petition the government for a redress of grievances." *See* U.S. CONST. amend. I. Under the *Noerr–Pennington* doctrine, "petitioning conduct" is generally insulated from liability. *See Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006) ("The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government for a redress of grievances.'"). Plaintiffs' constitutional right to bring a claim for patent infringement is limited only by the requirement that the litigation not be a "sham." *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525–26, 122 S. Ct. 2390, 2396, 153 L. Ed. 2d 499 (2002) ("while genuine petitioning is immune from antitrust liability, sham petitioning is not.") Defendants have not raised any allegations of "sham" litigation and so the *Noerr–Pennington* doctrine bars Defendants' defense on the facts that have been pled.

## 2. CEMCO's Claim on Other Patents Is Not Misuse of the Assigned Patents

The second major ground of Defendants' patent misuse defense is based on the allegation that "CEMCO and Clark have been attempting to control…all patents relating in any way to the Firestopping Products." (Dkt. #75 at 19:28 – 20:11.) Specifically, Defendants allege that Plaintiffs have "tr[ied] to seize additional patents, such as the '730 patent and the '759 patent, which were not part of the Settlement and do not fall within" it. (*Id*. at 20:4-6.)

As Plaintiffs alleged in the Complaint, "On February 23, 2016, CEMCO paid Blazeframe for the assignment of the Patents. However, Blazeframe has refused to assign the '759 patent and the '730 patent, *which fall within the scope of the Patents to be assigned under the Settlement Agreement*." (Dkt. #1 at ¶22 (emphasis added).) Contrary to Defendants' allegation that "CEMCO claim that it invented innovations and inventions actually invented by Jim Klein" (Dkt. #75 at 20:2-3),

the Complaint alleges no such thing. Rather, the Complaint merely alleges that the '730 and '759 patents are part of the bundle of Klein patents that should have been assigned to CEMCO pursuant to the Settlement Agreement.

Whether the '730 patent and the '759 patent are within the scope of the Settlement Agreement is an issue of contract interpretation. While Defendants may dispute Plaintiffs' claims, requesting that additional patents be included in the bundle of patents that were purchased does not mean that Plaintiffs have misused the patents that have already been assigned to them.

### 3.     Repairs and Defendants' Sales of Intumescent Tape

The third and fourth major grounds of Defendants' patent misuse defense relate to allegations that "CEMCO and Clark are attacking and bullying BlazeFrame and Klein with threats of patent infringement claims for making lawful and permissible repairs to already existing Firestopping Products…" (Dkt. #75 at 20:12-19.) And, relatedly, Defendants allege that "CEMCO and Clark complain of BlazeFrame and Klein's selling of intumescent tape outside the six-state area." (Dkt. #75 at 20:20-27.) These are strawman arguments.

As noted above, the Constitution permits Plaintiffs to assert infringement of patents it owns. Furthermore, Plaintiffs do not seek to prevent Defendants from "making lawful and permissible repairs to already existing Firestopping Products." As Plaintiffs have repeatedly made clear in prior briefings, that is not the type of sales Plaintiffs are complaining of in this case. (Dkt. #61 at 8:26-27).

Rather, Defendants' documents show that they are selling *large amounts of tape* to individual customers outside of the six-state region in order to allow the customers to manufacture BF Products on-site. (*Id.* at 8:27 – 9:2.)

For example, BlazeFrame admits that it "has sold intumescent tape to the following entities: AMS, Andersen Construction, Anning Johnson, Big Mountain Materials & Supply, Boldt, CALPLY, Cascade Acoustics, Drywall Distributors, Enderis Co., Expert Drywall, FC Modular, Firstline Systems, Great Western

Building Material, GTS, KHS&S Contracting, MRI Steel Framing, PCI, Rew Materials, and Winroc." (*Id.*, Ex. 14: BlazeFrame's Response to Interrogatory No. 3.) In particular, BlazeFrame sold at least 13 rolls of intumescent tape (over 1,000 feet of tape) to Boldt, a company located in Minnesota, that were shipped by BlazeFrame to Eau Claire, <u>Wisconsin</u>. (*Id.*, Ex. 15 (BF895).) In addition, BlazeFrame sold at least 25 rolls of intumescent tape (over 2,000 feet of tape) to FC MODULAR, a company located in New York, that were shipped by Blazeframe to <u>New York</u>. (*Id.*, Ex. 16 (BF896-97).) The volume of tape sold outside the territory cannot be feasibly be used only for repairs.

Plaintiffs' Complaint contains allegations regarding only these types of sales, not the sale of intumescent tape for repairs of existing licensed products. The alleged actions by BlazeFrame, if proven to be true, would constitute contributory infringement and inducing infringement. 35 U.S.C. §§271(b) and (c).

### 4.     Sales in Canada Are Not an Issue

The fifth major ground of Defendants' patent misuse defense is that "CEMCO and Clark have attempted to limit BlazeFrame's sales in Canada." (Dkt. #75 at 20:28.) Plaintiffs' Complaint (Dkt. #1) does not mention Canada at all, let alone sales of licensed products in Canada. The assigned patents at issue are United States patents.

Given that the Complaint makes no mention of Canada, it is difficult to determine the basis for Defendants' belief that Plaintiffs are seeking to "limit BlazeFrame's sales in Canada." Defendants allege, "This was reflected in Plaintiffs' briefing on enforcement of the Settlement in the Prior Litigation..." (Dkt. #75 at 21:1-4.) However, that briefing is not at issue in this case. The Plaintiffs' Complaint sets forth its present allegations.

As to Defendants' claim that this "is also reflected in comments made by CEMCO and Clark representatives to distributors and other customers, to the effect that BlazeFrame can only sell licensed products in a small, six-state area (which is

TROJAN LAW OFFICES
BEVERLY HILLS

plainly false),” this claim is false as well. Even if CEMCO and ClarkDietrich representatives told distributors and customers that BlazeFrame can only sell the licensed products in the restricted territory, they would only be speaking the truth.

The parties have a genuine disagreement about the territorial limitation of BlazeFrame’s license. The territorial limitation is permitted under U.S. patent law. A proper question for this litigation is the extent of the limitation. CECMO seeking an answer to that question is not patent misuse. Defendants have thus failed to allege facts to support the patent misuse defense.

### 5.    Trademark Rights, UL Listings, Etc.

The sixth major ground of Defendants’ patent misuse defense is that “CEMCO and Clark are trying to limit and tie BlazeFrame and Klein’s conduct more generally to Clark’s efforts by bullying and threatening (and suing) a patent infringement suit if BlazeFrame and Klein do not give Clark trademark rights” and “trying to force Jim Klein to offer engineering judgments…” (Dkt. #75 at 21:9-25).

Defendants point to no facts to support their allegation that the purpose of the present suit was to force Defendants to give ClarkDietrich trademark rights and engineering judgement. Rather, it is Defendants who have threatened to take away the trademarks (just as Defendants attempted to take away the UL listings) from ClarkDietrich, despite Mr. Beattie’s representation at the October 2, 2015 settlement hearing in the prior case:

> MR. BEATTIE: I agree. It was not part of the deal, Your Honor, this is Paul Beattie again, Maria -- sorry -- there's no agreement to transfer the right to the Blazeframe trademark to CEMCO *but to the extent it is necessary to preserve the licensing rights to – to Clark Dietrich, I think it's fairly implied that those rights have to be continued to be extended for the life of the license.*

(Dkt. #1-1: Hearing Tr. 13:19 – 15:9 (emphasis added).)  Yet, as alleged in the Complaint, on April 22, 2016, Blazeframe issued a cease and desist notice to ClarkDietrich, threatening: “now that the Blazeframe-ClarkDietrich License

TROJAN LAW OFFICES
BEVERLY HILLS

Agreement is over, ClarkDietrich's continued use of Blazeframe's brandname, trademarks and third-party certifications misleads potential customers and causes confusion in the marketplace…Blazeframe will take further action and seek appropriate remedies." (Dkt. #1-4.) Plaintiffs' attempt to hold Defendants to their promise in the Settlement Agreement to allow ClarkDietrich to use BlazeFrame's trademarks is not patent misuse, but rather a contractual dispute.

Further, as to Defendants' allegation that "CEMCO and Clark are trying to force Jim Klein to offer engineering judgments," the allegation does not support Defendants' contention that Plaintiffs have "impermissibly broadened the physical or temporal scope" of the assigned patents. To the extent ClarkDietrich has requested Defendants to "maintain" the UL listings and related services for ClarkDietrich's benefit, that is a request based on a contractual obligation. It is not based on ownership of the patents because ClarkDietrich does not own the patents.

In short, although Plaintiffs believe ClarkDietrich is entitled to a trademark license and to have BlazeFrame and/or Klein continue to perform engineering judgments under the terms of the Settlement Agreement, these issues have nothing to do with the patent misuse defense.

### 6. Invalidity

The seventh and final major ground of Defendants' patent misuse defense is that "CEMCO and Clark are asserting patents that they know or believe to be invalid and unenforceable." (Dkt. #75 at 21:26-27.) Defendants overlook the fact that the Court has already struck, with prejudice, Defendants' invalidity and unenforceability defenses. (Dkt. #72.) The patent misuse defense cannot be used as a backdoor to attack validity of the patents when the Court has already struck Defendants' invalidity and unenforceability defenses. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("Patent misuse arises in equity, and a holding of misuse renders the patent unenforceable until the misuse is purged; it does not, of itself, invalidate the patent.")

-17-

In short, Defendants have failed to allege sufficient facts to support the claim that Plaintiffs have impermissibly broadened the scope of the asserted patents with anticompetitive effect. Therefore, Defendants' Fifth Affirmative Defense should be stricken.

### C. The Court Should Not Grant Leave to Amend

The Court should strike the patent misuse defense without leave to amend. Defendants have now had two opportunities to amend with the FAA and the SAA. The new allegations in the SAA were made in response to Plaintiffs' first motion to strike, yet Defendants are not able to allege any additional facts to support their patent misuse defense. Thus, allowing Defendants another opportunity to amend would be futile. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) ("The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial....").

## IV. CONCLUSION

For the foregoing reasons, the Court should GRANT Plaintiffs' Motion to Strike Defendants' Fifth, Affirmative Defense.

Respectfully submitted,

TROJAN LAW OFFICES

by

March 31, 2017

/s/ R. Joseph Trojan
R. Joseph Trojan
Attorney for Plaintiff,
CALIFORNIA EXPANDED METAL
PRODUCTS COMPANY

/s/ Ann G. Schoen
Ann G. Schoen
FROST BROWN TODD LLC
Attorney for Plaintiff,
CLARKWESTERN DIETRICH BUILDING
SYSTEMS LLC

0121667.0602415   4817-3797-8950v2

TROJAN LAW OFFICES
BEVERLY HILLS