UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA EXPANDED METAL PRODUCTS COMPANY, ET AL., <br><br>          Plaintiff, <br><br>     v. <br><br> JAMES A. KLEIN, ET AL., <br><br>          Defendants. | Case No. CV 16-05968 DDP (MRWx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, IN PART** <br><br> [Dkt. 54, 61] |

Presently before the court is Plaintiffs' Motion for Preliminary Injunction.  Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I.   Background**

Defendant James Klein ("Klein") is the named inventor on several patents for building materials. (Complaint ¶ 9.)  Klein assigned some of those patents to a company he helped form, Defendant Blazeframe Industries, Ltd. ("Blazeframe"). (Id. ¶ 10.) Klein, Blazeframe, and Plaintiffs California Expanded Metal Products Company ("CEMCO") and ClarkWestern Dietrich Building Systems LLC ("Clark") litigated several questions regarding the

ownership, licensing, and alleged infringement of the patents in a prior case before this court. (Compl. ¶ 11.) See No. CV 12-10791-DDP(MRWx) ("the prior case").

The parties settled all claims in the prior case. (Compl. ¶ 12.) The transcript of a settlement conference constitutes the settlement agreement.[1] Plaintiffs allege that the settlement agreement required Blazeframe to assign the patents to CEMCO in consideration for an up-front payment. (Id. ¶ 16.) Blazeframe retained a royalty-free license to "commercialize the Patents in a restricted territory" spanning six states." (Id. ¶¶ 16-17.) CEMCO also agreed to grant a license to Clark in exchange for royalty payments, a portion of which would be paid to Blazeframe. (Id.) The settlement transcript includes the following colloquy:

> [CEMCO]: CEMCO shall grant Blazeframe the right to continue to sell under the Blazeframe patents in the territory of Washington, Alaska, Idaho, Montana and Wyoming. And that license shall be royalty free for the remaining life of the patents. . . .
>
> [Clark]: The license to [Clark] is an exclusive license as to the Blazeframe patents but for the six states to Klein and Blazeframe; is that correct?
>
> [CEMCO]: Correct. . . .
>
> [Clark]: . . . And the limitations on MR. Klein -or on Blazeframe to the - six state region is that Blazeframe will only make no sales that will basically cross outside that six-state region. It will all - the sales and the delivery of the products will all be within that six-state region; is that correct?
>
> [Blazeframe]: That's not my understanding. My understanding is that that's defined as it is in the current licensing agreement - the same agreements as exist now - same agreements as exist now -

---

[1] The parties agreed to the terms of a settlement at the settlement conference and further agreed that if they failed to agree on a memorialization of those terms, the transcript of the settlement conference would constitute the settlement agreement.

2

[Clark]: Well . . . But – but Klein – Blazeframe has some rights . . . to sell outside of the six-state region right now.

[CEMCO]: [I]f you'll recall, Mr. Klein specifically wanted to sell to dealers outside of this area. And we specifically said no to that and he came back and said that's okay. So he's aware of that. That was put on the table, and we didn't accept it and then [Blazeframe] agreed that it was off the table. So he had no dealers since those dealers are outside of this area; the sales are within the – these – this geographic region. That's his territory.

[Blazeframe]: See . . . . That's my understanding too that all sales have to be within the region.

[CEMCO]: Correct.

[Clark]: Okay. How did I say something different?

[Blazeframe]: I don't know. Maybe I wasn't – I –

[Clark]: The sales are all with – confined within that six-state region. There can't be any sales by Blazeframe that go outside that region.

[Blazeframe]: I understand that he can't sell to anyone outside that region. That's what [CEMCO] said; that's what I heard.

(Declaration of R. Joseph Trojan In Support of Motion, Ex. 1 at 9:24-12:5.)

Plaintiffs allege that Blazeframe is breaching the settlement agreement by, among other things, selling licensed products outside the agreed-upon six state area. (Compl. ¶¶ 27, 38.) Plaintiffs further allege that these sales have been "orchestrated by Klein." (Id. ¶ 37.) Blazeframe also allegedly sells licensed product to Big Mountain Materials Supply LLC, a company controlled by Klein or his family members, which then re-sells the product throughout the country. (Id. ¶ 25.) Plaintiffs further allege that Blazeframe has sold component parts of the licensed products to buyers outside Blazframe's territory so that the buyers can manufacturer licensed

3

product on-site. (Id. ¶ 26.) Plaintiffs also allege that by selling licensed products outside of the agreed-upon geographical area, Blazeframe is infringing upon the patents owned by CEMCO, to which Clark has an exclusive license outside of Blazeframe's territory. (Id. ¶¶ 44-45.)

Plaintiffs now move for a preliminary injunction enjoining Defendants from advertising, offering for sale, or shipping Blazeframe products, or component parts for manufacturing purposes, outside the six-state restricted territory, including to third parties within the restricted territory that Blazeframe knows will then ship or use the products outside the territory.

**II. Legal Standard**

A private party seeking a preliminary injunction must show that: (i) it is likely to succeed on the merits; (ii) it will suffer irreparable harm in the absence of preliminary relief; (iii) the balancing of the hardships and equities between the parties that would result from the issuance or denial of the injunction tips in its favor; and (iv) an injunction will be in the public interest. Winter v. Natural Res. Defense Counsel, 555 U.S. 7, 20 (2008). Preliminary relief may be warranted where a party: (i) shows a combination of probable success on the merits and the possibility of irreparable harm; or (ii) raises serious questions on such matters and shows that the balance of hardships tips in favor of an injunction. See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations, the party must

4

demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury" absent the issuance of the requested injunctive relief.[2]  Id.

**III. Discussion**

    A.   Likelihood of Success on the Merits

    Plaintiffs have demonstrated that they are likely to succeed on the merits of some aspects of their breach of contract claim. Plaintiffs have submitted evidence that Defendants have made direct sales to a dozen different buyers in ten different states outside Blazeframe's six-state territory.[3] (Trojan Decl., Exs. 3-10.) Plaintiffs have also submitted evidence of numerous sales to Big Mountain Materials Supply LLC, a Washington corporation with no employees or payroll that lists "Serina Klein," who Plaintiffs represent is Klein's wife, as its registered agent and an individual Plaintiffs represent to be Klein's mother-in-law as governor. (Trojan Decl., Exs. 12-13, 22.) Many of Blazeframe's sales to Big Mountain are shipped to addresses outside the six-state region.[4] (Trojan Decl., Ex. 12 at 8-26.) Blazeframe also appears to have sold significant quantities of intumescent tape, a

---

[2] Even under the "serious interests" sliding scale test, a plaintiff must satisfy the four Winter factors and demonstrate "that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

[3] Plaintiffs also submitted evidence of sales made within Blazeframe territory, but shipped to addresses outside Blazeframe's region, discussed further below. (Trojan Decl., Ex. 11.)

[4] Plaintiffs further assert, albeit without specific evidentiary support, that Big Mountain "resells" Blazeframe product without any markup.

5

component part of the licensed products, to out-of-area buyers.[5] (Trojan Decl., Exs. 15-18.)

Although Defendants take issue with Plaintiffs' computation of Blazeframe's extra-territorial sales, Defendants do not dispute that they made direct sales outside of Blazeframe's six-state region. Defendants nevertheless contend that an injunction is not warranted because Defendants no longer make direct extra-territorial sales and because the settlement agreement allows Blazeframe to make sales to distributors who may then re-sell licensed products outside Blazeframe territory.[6] As an initial matter, it appears that Blazeframe's significant sales to Big Mountain are a sham, made solely for purposes of circumventing the settlement agreement's territorial restrictions. The court is therefore not persuaded by Defendants' claims that direct extra-territorial sales have ceased, and Plaintiffs have made a strong showing of a likelihood of success on the merits of the breach of contract claim based upon direct sales.

The question remains, however, whether the settlement agreement forbade the type of sales Blazeframe apparently intends to continue making to in-territory distributors who then ship licensed product out of Blazeframe territory. "[A]n unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of that item thereafter . . . ." Keurig, Inc. v. Sturm Foods, Inc., 732 F.3d 1370, 1373 (Fed. Cir. 2013); see

---

[5] Although Plaintiffs acknowledge that some tape sales may be for legitimate repair purposes, the quantities shipped suggest some other purpose, such as on-site manufacture of licensed products.
[6] Defendants' counsel represented at oral argument that Big Mountain has been defunct since mid-January 2017.

also Monsanto Co. v. Scruggs, 459 F.3d 1328, 1335-36 (Fed. Cir. 2006) ("The first sale/patent exhaustion doctrine establishes that the unrestricted first sale by a patentee of his patented article exhausts his patent rights in the article."). "This exhaustion doctrine, however, does not apply to an expressly conditional sale or license." B. Braun Medical, Inc. v. Abbott Laboratories, 124 F.3d 1419, 1426 (Fed. Cir. 1997). The question here, therefore, is whether the settlement agreement expressly placed any downstream restrictions upon Blazeframe's sales of licensed products.

At the settlement hearing, the transcript of which constitutes the settlement agreement, Clark's counsel specifically stated, "And the limitations on Mr. Klein -or on Blazeframe to the – six state region is that Blazeframe will only make no sales that will basically cross outside that six-state region. It will all – the sales and the delivery of the products will all be within that six-state region; is that correct?" This framing of the question unambiguously forbade Blazeframe from making any sales that would ultimately leave Blazeframe's territory, even through in-territory distributors other than Big Mountain.

Blazeframe's counsel did not, however, agree to Clark's counsel's characterization. CEMCO's counsel then explained, "Mr. Klein specifically wanted to sell <u>to dealers outside of this area</u>. And we specifically said no to that and he came back and said that's okay. . . . [Blazeframe] agreed that it was off the table. So he had no dealers since those dealers are outside of this area; <u>the sales are within the – these – this geographic region</u>. That's his territory." (Emphases added). Clark's counsel reiterated her initially stated interpretation, that "[t]he sales are all with –

7

confined within that six-state region. There can't be any sales by Blazeframe that go outside that region."

Blazeframe's counsel then acknowledged, "I understand that he can't sell to anyone outside that region. That's what [CEMCO] said; that's what I heard." Although CEMCO's counsel referred to an agreement regarding "sales" within Blazeframe territory, he did so in the context of discussing Klein's frustrated desire to sell to dealers extraterritorially, and did not expressly mention in-territory sales to dealers who would then sell extraterritorially. As a result of the ambiguity of this characterization of the agreement, to which Blazeframe acceded and which arguably contrasted with Clark's interpretation, Plaintiffs have not, at this stage, shown a likelihood of success on the merits with respect to extraterritorial downstream sales.

Defendants also argue that Plaintiffs are not likely to succeed on the merits because their actions violate antitrust law. (Opposition at 20.) Although the argument is not developed at length, Defendants assert that Clark and CEMCO entered into a "supplemental settlement agreement" after the settlement agreement at issue here as part of a conspiracy to horizontally restrain trade and divide a market. (Opp. at 14, 20.) "Classic" horizontal market division agreements, in which competitors agree to divide the market for a product, are indeed per se antitrust violations. See California ex rel. Harris v. Safeway, Inc., 651 F.3d 1118, 1137 (9th Cir. 2011). Plaintiffs acknowledge that they entered into a settlement agreement arising out of an unrelated disparagement action in Ohio state court. (Reply at 15-16.) It is unclear to this Court, however, how that agreement constitutes an

impermissible restraint of trade, particularly given Blazeframe's continuing market position within its six-state area and its acceptance of a monetary payment in exchange for the relevant patents, or otherwise insulates Defendants from Plaintiffs' claims here. Barring further elaboration from Defendants, the "supplemental settlement agreement" does not diminish the likelihood that Plaintiffs will succeed on the merits.[7]

To the extent that Plaintiffs seek to enjoin Blazeframe from advertising outside its six-state territory, Plaintiffs did not initially submit any evidence that Blazeframe makes any offers to sell outside the restricted area. Although CEMCO's counsel's declaration states that Blazeframe's website does not list any territorial restrictions, that is not sufficient to establish that Blazeframe solicits extraterritorial sales via its website. (Trojan Decl., ¶ 22.)

The court sought supplemental briefing, however, on Klein's role in soliciting extraterritorial sales through distributors. It is undisputed that Klein travels the country to promote Blazeframe products, including, but not limited to, the licensed products at issue here. Upon request, Klein provides pricing information "identical" to that listed on the Blazeframe website. (Supplemental Declaration of James Klein ¶ 15.) Klein states that extraterritorial potential customers "initiate a sales activity" by calling or e-mailing Blazeframe. (Id. ¶ 17.) Blazeframe then "facilitates the sale" of the requested products. (Id.) When the

---

[7] Defendants also argue, without any citation to the record, that both Plaintiffs have breached the settlement agreement at issue here. The court declines to address these unsupported assertions.

9

requested products are licensed products covered by the patents at issue here, Klein or Blazeframe "refers the potential sale/sales lead to . . . authorized dealer/distributors . . . ." (Supp. Klein Decl. ¶ 18.) Klein represents that these distributors are "local," and that one Washington distributor in particular, SteelTec, "now receives and handles a majority of sales of 'licensed product' to buyers located outside BlazeFrame's six-state territory." (Id ¶ 21.)[8] Klein further asserts that distributors outside Blazeframe territory "now only sell and distribute non-licensed products[.]" (Id.)

Klein's representations appear to conflict with evidence submitted by Plaintiffs. In one e-mail to an extraterritorial contractor, Klein states that Blazeframe "can sell through any local distribution yard." (Declaration of Ann Schoen, Ex. 2.) Although it is not entirely clear whether licensed products are at issue in the e-mail exchange, Klein's representation to the contractor casts some doubt upon his assertion that no extra-territorial distributor deals in licensed products. Clark also submits e-mail exchanges between Klein and a New York distributor, Studco, and a Colorado distributor, Heartz Building Supply, in which Klein appears to provide pricing strategies and information for licensed products. (Id., Exs. 3, 4.) Klein also sent e-mails to parties in Nebraska and Maryland listing prices for licensed

---

[8] As discussed above, it remains to be seen whether extraterritorial downstream sales by independent distributors are permitted by the settlement agreement. It is unclear, however, whether Klein's reference to "a majority of sales of 'licensed product' to buyers located outside BlazeFrame's six-state territory[,]" is best characterized as referring to distributor sales or to Blazeframe's sales.

products shipped via resellers. (Declaration of Francis Wong, Exs. 1, 2.) Contrary to Klein's declaration, the prices quoted do not appear to be "identical" to those listed on Blazeframe's website. (Id.; Supp. Klein Decl. ¶ 15.)

Despite the inconsistencies between Klein's representations and the evidence submitted by Defendants, it remains unclear whether Klein engages in conduct that constitutes extraterritorial advertising for sale, as opposed to product education or promotion. It is unclear, for example, whether Klein's reference to "any local distribution yard" refers to in-territory yards or out-of-territory yards local to the end user. Even if the latter, it is also unclear whether Klein and that end user discussed licensed or unlicensed Blazeframe products. Furthermore, although Klein's communications regarding distributor pricing strategies and end-user price quotes, including shipping costs, raise some questions about his relationship to, and the independence of, distributors, the evidence is insufficient at this stage to establish that these distributors are similar to Big Mountain or otherwise fall under Klein's control.

B.   Irreparable Harm

Plaintiffs argue that Blazeframe's extraterritorial sales are causing irreparable harm in the form of price erosion and loss of market share. (Motion at 9-12.) "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." Advanced Transit Dynamics, Inc. v. Ridge Corp., No. CV 15-1877 BRO (MANx), 2015 WL 12516692 at *24 (C.D. Cal. Aug. 24, 2015) (quoting Celsis in Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012)

(internal quotation marks omitted).  Plaintiffs have submitted evidence that buyers of licensed products outside of Blazeframe's territorial area have stated that Clark "needed to get in line with [its] 'Blazeframe pricing[,]'" after getting price quotes for licensed products directly from Blazeframe.  (Dkt. 39, Declaration of Gregg A. Stahl, Ex. 6 at 1)

Defendants argue that there is no irreparable harm because Blazefram's direct extraterritorial sales have ceased, and harm resulting from any such prior sales can be compensated by money damages.  As discussed above, the court is not persuaded that Blazeframe's extraterritorial sales have ceased.  Furthermore, as Plaintiffs argue, Blazeframe may be judgment-proof, limiting the deterrent effect of money damages.  See, e.g., Aviara Parkway Farms, Inc. v. Agropecuaria La Finca, S.P.R. de R.L., No. 08 CV 2301 JM (CAB), 2009 WL 249790 at *3 (S.D. Cal. Feb. 2, 2009); Wang Laboratories Inc. v. Chip Merchant Inc., No. 93-893-K (POR), 1993 WL 42820 at *7 (S.D. Cal. Sept. 3, 1993).  Plaintiffs have adequately shown a risk of irreparable harm.

C.   Balance of the Equities and the Public Interest

Defendants are correct that, as a "one man operation with few resources," Blazeframe can less "readily withstand hardship" than Plaintiffs, which are both large, well-capitalized organizations. Nevertheless, it does not appear to the court that issuance of an injunction would negatively affect Defendant in any way.  Even if an injunction were to issue, Blazeframe would be free to continue selling licensed product within its six-state territory. Furthermore, the public interest in upholding principles of contract law appear to outweigh any countervailing considerations.

12

Indeed, it is unclear to the court how, as Defendants argue, an injunction "would substantially reduce competition in an emerging market," considering the fact that Blazeframe is contractually prohibited from competing, and claims not to compete, outside of its six-state area.

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Motion for a Preliminary Injunction is GRANTED, in part. An injunction shall issue by separate Order of this Court.

IT IS SO ORDERED.

Dated: May 9, 2017

DEAN D. PREGERSON
United States District Judge